## Respublica *against* John Meylin, Robert Maxwell, and Adam Reigart, jun., commissioners of Lancaster county.

Indictment will not lie against county commissioners for refusing to pay money allowed for a bridge by the sessions and grand jury, under the act of assembly of 15th August 1732, nor under the act of 11th April 1799, for a bridge erected before the passing of that law.

INDICTMENT for a misdemeanor, found at a Court of Oyer and Terminer. It stated, that the Court of Quarter Sessions of Lancaster county, having taken into consideration the opinions of several grand juries, respecting a stone bridge built by Christian Binckley, over Conestogoe creek, did in August sessions 1799, concur with the grand jury, in the appropriation of 1600l. out of the county stock thereto, the payments to be made in equal quarter-yearly instalments ; that the said Christian, on the 28th November 1799, gave notice thereof to the defendants, then commissioners of the said county, and then tendered to them an indenture from himself and Elizabeth his wife, to them and their successors in office, for public use, for one perch of land round the heads of the said bridge, with free ingress, &c. Nevertheless the defendants refused to obey the order of the court, by refusing contemptuously to give appropriation to the said 1600l. and drawing orders for the same, &c.

It appeared in evidence at the trial, that the grand jury in August sessions 1797, made a presentment, that part of the expenses attending the erection of the bridge, should be paid by the county, and laid before the next grand jury. That in November sessions following, another presentment was made, that *a reasonable sum should be allowed out of the county stock.—That in August sessions 1798, another present- [*2

3 YEATES—1

[Respublica *v.* Meylin et al. commissioners.]

ment was made, refusing an appropriation for the time, the bridge being unfinished, and great sums wanted for public use, but recommending the measure to the next grand jury. That in November sessions 1798, another presentment was made, stating that the costs and expenses of erecting the said bridge, amounting in the whole to 4144l. 2s., which were reduced by the grand jury to 3481l. 17s. from which deducting the sum raised by subscription 400l. there remained 3081l. 17s., towards which, the grand jury allowed the said Christian Binckley 1600l. to be paid out of the county stock, 800l. to be paid to him in six months, and the remaining 800l. in twelve months, on his executing a conveyance to the commissioners for the public use of one perch of land, round the heads of the said bridge, with free ingress, &c.

The justices in August sessions 1799, took up the consideration of the presentment of the grand jury, made at the preceding November sessions, and concurred therein, as to the appropriation of 1600l. out of the county stock towards Binckley's bridge, the payments to be made in quarter-yearly instalments.

In February sessions 1799, the presentment of another grand jury was made, concurring with that of the former sessions.

Mr. Montgomery for the defendants, insisted, that the act of 11th April 1799, 4 Dall. St. Laws, 517, § 24, could not operate in this case. The commissioners were not empowered thereby, to purchase bridges already erected. The proceedings respecting the erection and repair of bridges, are minutely pointed out by this law. It confers a special authority which must be strictly pursued. Besides, if the 23d section should be supposed to relate to the following section, the indictment should have been preferred in the Court of Quarter Sessions, and not in the Court of Oyer and Terminer. The act of 15th August 1732, 1 Dall. St. Laws, 283, § 3, gives the commissioners and assessors a discretion as to the building of bridges, and this they are bound to exercise, according to the best of their own judgments. It is highly questionable, under the law of 1799, whether if the proceedings had been regular, the commissioners are punishable by indictment for refusing to execute the order of the sessions.

Mr. Hopkins for the commonwealth, argued, that whatever might be the powers formerly claimed by the commissioners as to the building of bridges, their authority was now merely ministerial. It is true, the presentment of the grand jury, on which the indictment was founded, was made in November sessions *1798, confirmed in February sessions 1799, antecedent to the passing of the law on the 11th April following. But those presentments with the three preceding ones, were substantial findings, that the bridge was necessary and conduced to the public benefit ; and that on principles of justice and right, the county should bear a proportional part of the expenses incurred

[Respublica v. Meylin et al. commissioners.]

thereby.    The presentments were continued under consideration by the justices, who acted under the last law, and both court and jury having approved of the bridge, it became the duty of the defendants to carry the measure into execution; for the refusal whereof they were criminally punishable.

As to the indictment being found in the Court of Oyer and Terminer, the present conformation of the courts, afforded an answer to that objection.

By the Court.    The sufficiency of the charge must depend either on the common law, or our own municipal acts.

At common law, there was no such office as county commissioners, and therefore under it, the indictment cannot be supported.

The first act of assembly respecting the erection of bridges, seems to be that of 1700.    1 Dall. St. Laws, 19.    It directs, that the county courts, with the concurrence of the grand juries, shall appoint and agree with persons to build bridges, to be paid for out of the county stock.

The act of 15th August 1732, changes the law, and declares, that the grand juries, commissioners and assessors with the concurrence of the justices of the General Quarter Sessions of the Peace shall be the sole judges where any bridge shall be built, and the commissioners, assessors and justices shall agree with workmen, &c.    The commissioners acting judicially, under this law, are equally dispunishable with a grand jury, for refusing to agree to the building of a bridge.    They are bound by the duties of their office, to exercise a sound discretion, when such matters come before them.

The late act of 11th April 1799, takes away the discretion of the commissioners, but directs the requisite steps to be taken in the building of bridges at the county expense.    This law is expressly confined to future cases, to bridges to be erected or repaired, on any public road.    A petition must be given in to the sessions, stating the place, and circumstances of the case, with the probable expense.    The court shall give the petition in charge to the grand jury, who shall consider of the propriety of erecting or repairing the bridge prayed for.    And if the court *and jury shall approve thereof, the court shall make [*4 an order, &c.

In the present instance, the bridge was finished before the law was enacted, and even before the presentment of the grand jury, in November 1798, and it was absolutely impracticable under the circumstances of the case, to render the law applicable thereto.    Under this act therefore, the prosecution cannot be supported.    And it is unnecessary to give any opinion on the point made, respecting the indictment being found in the Court of Oyer and Terminer.    But the court have no difficulty in saying, that if the present case had been clearly within the provisions of the act of 1799, the commissioners would be punishable

by indictment for neglect of duty, against the positive words of a law.

If the legislature had been less particular in the penning of this act, it would be a dangerous precedent, to subject a county to pay for bridges, erected by individuals at their own will and for their own emolument, without the previous approbation of the public constituted authorities. Other interested persons would follow the example, and it would soon become a general evil.

Verdicts *non cul.*